**MALAMUT & ASSOCIATES, LLC**
Mark R. Natale, Esq.
457 Haddonfield Road Suite 500
Cherry Hill, NJ 08002
856-424-1808
856-424-2032 (f)
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Pete Solotruk** | : | |
| | : | |
| | : | |
| **Plaintiff** | : | CIVIL ACTION |
| | : | No. 2:21-cv-00382-ER |
| vs. | : | |
| **Road Scholar Transport** | : | **SECOND AMENDED COMPLAINT** |
| | : | **PLAINTIFF REQUESTS A TRIAL** |
| | : | **BY JURY** |
| | : | |
| **Defendant** | : | |

### PLAINTIFF'S SECOND AMENDED COMPLAINT

**I.   PRELIMINARY STATEMENT:**

1. This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, Pete Solotruk. Plaintiff was an employee of Defendant, ROAD SCHOLAR TRANSPORT, who has been harmed by the Defendant's discriminatory and retaliatory employment practices.

2. This action arises under the Americans with Disabilities Act ("ADA").

1

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. § 1391 as Plaintiff's claims are substantively based on the ADA. This court has supplemental jurisdiction over Plaintiff's common law wrongful termination case.

4. The Eastern District of Pennsylvania has general jurisdiction over the Defendant, and who operates a terminal in Philadelphia and does business throughout the Eastern District.

## III. PARTIES

5. The Plaintiff herein is Pete Solotruk, former employee of the Defendant.

6. The Defendant herein is ROAD SCHOLAR TRANSPORT. At all times relevant hereto, Defendant was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of their employment, and under the direct control of Defendant. At all times material herein, Defendant is and has been a "person" and "employer" as defined under the ADA.

## IV. UNDERLYING FACTS

7. The Defendant, upon information and belief, employed 50 or more persons when the unlawful conduct alleged in this Complaint occurred.

8. Defendant employed Plaintiff as a driver.

9. At all relevant times, Plaintiff performed his job well.

10. Plaintiff had all of the qualifications necessary to drive the vehicles used by the Defendant, had the skill to safely and efficiently operate the vehicles, and had the experience necessary in order to carry out all essential functions of a driver.

11. From the time Plaintiff interviewed for the job, he let Defendant know that he had a medical condition that impacted his eyesight and made him unable to work night shifts.

12. Specifically, Plaintiff suffered from photophobia in both eyes.

13. Because of Plaintiff's condition, his pupils are approximately twice the size of the average person.

14. Due to that, when he is driving at night and his pupils are fully dilated (because of the darkness), he is extremely sensitive to any light.

15. The biggest issue is driving at night while seeing the headlights of other cars.

16. While his pupils are fully dilated, when they are filled with light from an oncoming headlight, Plaintiff is effectively blinded for one to four minutes.

17. Plaintiff's condition impacts his vision and specifically, the ability of him to see after being exposed to headlights or other lights while his pupils are fully dilated.

18. This condition subsides during the daytime when his pupils are smaller due to the daylight.

19. Therefore, even a temporary drive-in darkness (for example, a tunnel) does not have the same impact as driving in night time, because his pupils are not fully dilated.

20. Instead, this condition directly impacts his vision

21. Plaintiff's photophobia interfered with one or more major life activities – specifically his vision, that made him a qualifying individual under the ADA.

22. At the interview, Defendant told Plaintiff it would be no problem accommodating this disability by providing him assignments that could be completed during the daylight hours.

23. Plaintiff was qualified to do the job, and had the skills and experience necessary to do the essential functions of the job.

24. Plaintiff' was qualified to do the job with a reasonable accommodation of a schedule modification, which Defendant stated they could accommodate based on their workload.

25. Once Plaintiff got there, at first he was only assigned assignments that could be completed during the daylight hours.

26. Defendant had plenty of local shipments that could be concluded during the day.

27. In fact, Defendant had a number of very local shipments, making it possible for Plaintiff to do multiple routes in one day without interference with his disability.

28. Plaintiff had every skill to do the essential functions of the job, as long as he was given the accommodation of being assigned routes that could be completed during daylight hours.

29. Defendant had the workload and ability to accommodate this restriction, however, Defendant chose not to.

30. Instead, throughout his employment, Plaintiff was asked to drive night shifts.

31. Plaintiff repeatedly declined to drive in the dark, constantly reminding the Defendant of his medical condition.

32. On or about December 21, 2018, Plaintiff was terminated.

33. Plaintiff was told that he no longer met Defendant's standards for a driver and that he was terminated effective immediately.

34. Plaintiff performed his job well.

35. The only issues with his job were when he had to decline shifts that were outside his restrictions.

36. It was clear there was animosity because of Plaintiff's restrictions.

37. Plaintiff was terminated because of his disability/perceived disability and request for a reasonable accommodation.

38. Plaintiff's termination violated the ADA.

## COUNT I

## DISCRIMINATION AND RETALIATION UNDER AMERICANS WITH DISABILITIES ACT

39. Paragraphs 1-27 are incorporated herein as if set forth at length.

40. Plaintiff qualified as disabled under ADA because his medical condition interfered with a major life activity, vision.

41. Plaintiff requested a reasonable accommodation of only working day shifts to accommodate this disability.

42. Originally, Defendant said Plaintiff's accommodation would be granted.

43. However, Plaintiff was repeatedly asked to work night shifts.

44. After repeatedly turning down these requests, Plaintiff was terminated.

45. Plaintiff's termination violated the ADA in two ways.

46. First, Plaintiff was terminated because of his disability/perceived disability, in violation of the ADA.

47. Second, Plaintiff was terminated in retaliation for requesting a reasonable accommodation, in violation of the ADA.

48. Defendant, its upper level managers, and supervisors all violated the ADA by terminating the Plaintiff.

**WHEREFORE**, Plaintiff requests that this court enter judgment in his favor against the Defendant, and order that:

A. Defendant compensate Plaintiff with back pay, at a rate of pay and other benefits and emoluments of employment to which he would have been entitled had she not been subjected to unlawful discrimination based on his disability, age, and request for leave.

B. Defendant compensate Plaintiff with an award of front pay, if appropriate.

C. Defendant pay to Plaintiff punitive damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses as allowable.

D. Defendant pay to Plaintiff pre and post judgment interest, the costs of suit and attorney and expert witness fees as allowed by law.

E. Defendant shall eliminate all unlawful discriminatory practices as well as remedy the discriminatory effect of past practices and procedures.

F. The Court shall award such other relief as if deemed just and proper, in law and/or equity, including injunctive relief if the Honorable Court deems said relief appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Respectfully submitted;

**MALAMUT & ASSOCIATES, LLC**

By. /s/ Mark R. Natale
    Mark R. Natale, Esq.